UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY ELLEN KENYON,

                              Plaintiff,

v.                                            5:16-CV-0260
                                              (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY LAW GROUP                             HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                   KATHRYN S. POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

    This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 12, 13.)

    Currently before the Court, in this Social Security action filed by Mary Ellen

Kenyon ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 9, 10.)  For the reasons set forth

below, it is ordered that Plaintiff's motion is denied and Defendant's motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1966.  (T. 112.)  She received her GED.  (T. 227.)

Generally, Plaintiff's alleged disability consists of fibromyalgia, left knee impairment,

carpal tunnel syndrome ("CTS"), memory loss, edema, bi-polar disorder, and anxiety.

(T. 112.)  Her date last insured is March 31, 2013.  (T. 111.)  Her alleged disability onset

date is July 26, 2012.  (T. 112.)  She previously worked as a licensed practical nurse

and cashier.  (T. 227.)

### B.      Procedural History

On December 24, 2012, Plaintiff applied for a period of disability and disability

insurance benefits under Title II of the Social Security Act.  (T. 111.)  Plaintiff's

application was initially denied, after which she timely requested a hearing before an

Administrative Law Judge ("the ALJ").  On July 30, 2014, Plaintiff appeared before the

ALJ, F. Patrick Flanagan.  (T. 73-110.)  On October 28, 2014, ALJ Flanagan issued a

written decision finding Plaintiff not disabled under the Social Security Act.  (T. 17-37.)

On January 8, 2016, the Appeals Council ("AC") denied Plaintiff's request for review,

rendering the ALJ's decision the final decision of the Commissioner.  (T.1-6.)

Thereafter, Plaintiff timely sought judicial review in this Court.

### C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and

conclusions of law.  (T. 22-32.)  First, the ALJ found that Plaintiff met the insured status

requirements through March 31, 2013 and Plaintiff had not engaged in substantial gainful activity since July 26, 2012. (T. 22.) Second, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, anxiety disorder, and affective disorder. (T. 22.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 24-25.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> lift and/or carry 20 pounds occasionally, ten pounds frequently, sit for six hours in an eight-hour day, and stand and/or walk for six hours in an eight hour day. [Plaintiff] should avoid working in cold temperatures, below 32 degrees. She is able to occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] is able to understand, remember and carry our simple instructions and tasks. She is able to tolerate no more than occasional changes in routine and occasional decision-making. She is able to accept instructions from supervisors, relate to coworkers, and deal superficially with the public. She is not able to perform fast-paced production tasks.

(T. 26.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 30-32.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred at step two in assessing the severity of Plaintiff's impairments. (Dkt. No. 9 at 9-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues the RFC determination is not supported by substantial evidence. (*Id.* at 11-14.) Third, Plaintiff argues the credibility determination is not supported by substantial

evidence.  (*Id.* at 15-16.)  Fourth, and lastly, Plaintiff argues the ALJ's step five determination is not supported by substantial evidence.  (*Id.* at 17.)

### B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues the ALJ properly considered Plaintiff's impairments at step two.  (Dkt. No. 10 at 5-7 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ's RFC finding is supported by substantial evidence.  (*Id.* at 7-14.)  Third, Defendant argues the ALJ properly considered Plaintiff's subjective statements.  (*Id.* at 14-18.)  Fourth, and lastly, Defendant argues the ALJ's step five finding is supported by substantial evidence.  (*Id.* at 18-19.)

## III.   RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

### A.  The ALJ's Step Two Determination

At step two of the sequential evaluation process, an ALJ must determine whether a plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *See* C.F.R. § 404.1520(c).  The plaintiff bears the burden of presenting evidence establishing severity.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a).

A "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'"  *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered

the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y. 2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).

Plaintiff argues the ALJ's step two analysis was deficient because the ALJ failed to conclude that Plaintiff's back and knee impairments were severe. (Dkt. No. 9 at 9-11 [Pl.'s Mem. of Law].) Here, any error the ALJ may have made would be harmless.

At step two the ALJ identified Plaintiff had the severe impairments of fibromyalgia, anxiety, and affective disorder. (T. 22.) The ALJ then proceeded with the sequential process. During the subsequent steps of the process, the ALJ specifically considered Plaintiff's back and knee impairments. (T. 26-30.) For example, in formulating his RFC, the ALJ discussed diagnostic evidence, including an MRI, of Plaintiff's knee and spine. (T. 27.) The ALJ outlined physical examinations indicating normal gait and no sensory deficits, and full range of motion of the knees and spine. (*Id.*) The ALJ further discussed medical opinion evidence which provided physical

limitations based on an examination of Plaintiff including her back and knees. (T. 29.)

Because Plaintiff's back and knee conditions were considered during the subsequent

steps, any error at step two was harmless. *See Reices-Colon,* 523 F. App'x at 798.

### B. The ALJ's RFC Determination

Plaintiff's RFC is the most she can do despite her limitations. 20 C.F.R. §

404.1545(a)(1).

In formulating his RFC determination the ALJ relied on the medical opinion

evidence provided by consultative examiners, Elke Lorensen, M.D. and Jeanne

Shapiro, Ph.D., and non-examining State agency medical consultant, Vigita Reddy,

Ph.D. (T. 29-30.) The ALJ also relied on medical treatment records provided by

Plaintiff's treating pain management provider, Ralph Ortiz, D.O., and primary care

provider, Nicholas Biondi, M.D. (T. 27-30.)

As an initial matter, Plaintiff argues that the ALJ erred in relying primarily on the

opinions and examinations of the consultative examiners because "one-time

examinations [do] not reflect the extent of Plaintiff's conditions and [are] inconsistent

with her longstanding treatment." (Dkt. No. 9 at 12, 14 [Pl.'s Mem. of Law].)

To be sure, more weight is generally given to the opinion of a treating source. 20

C.F.R. § 404.1527(c)(2). However, it is well settled that an ALJ is entitled to rely upon

the opinions of both examining and non-examining State agency medical consultants,

since such consultants are deemed to be qualified experts in the field of social security

disability. *See Id.* at §§ 404.1512(b)(6), 404.1513(c), 404.1527(e).

The Second Circuit has continuously held that the opinions of State agency

medical examiners can constitute substantial evidence to support an RFC

determination.  *See Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d

Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016);

*Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016); *see*

*also Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to

rely upon the opinions of both examining and non-examining State agency medical

consultants, since such consultants are deemed to be qualified experts in the field of

social security disability."); *see also Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y.

2015) (the Regulations "recognize that the Commissioner's consultants are highly

trained physicians with expertise in evaluation of medical issues in disability claims

whose "opinions may constitute substantial evidence in support of residual functional

capacity findings.") (internal citations omitted).  Therefore, the ALJ did not err as a

matter of law in relying on the medical opinions of the examining and non-examining

consultative medical sources in formulating an RFC determination.

Overall, the ALJ's physical RFC determination is supported by substantial

evidence in the record.  The ALJ relied on the examination and opinion of Dr. Lorensen,

medical treatment notations in the record from Plaintiff's treating providers, and

Plaintiff's activities of daily living.

Dr. Lorensen examined Plaintiff and opined that she had "moderate restrictions

squatting" and should avoid respiratory irritants.  (T. 533.)  Dr. Lorensen observed, in

relevant part, that Plaintiff had a normal gait, could walk on heels and toes, and could

squat 40%.  (T. 531.)  Dr. Lorensen also noted Plaintiff had full range of motion in her

cervical and lumber spine, full range of motion in her upper and lower extremities, and

no trigger points.  (T. 532.)  Plaintiff's hand and finger dexterity were intact with full grip strength bilaterally.  (*Id.*)

Although Dr. Ortiz consistently noted antalgic gait and tender points on examination, his notations indicated that Plaintiff's fibromyalgia symptoms were well controlled with medication which allowed her to care for herself, maintain current activities of daily living, work and return to many daily activities.  (T. 475-510, 512-514, 568-681.)  Further, other treating providers, and Dr. Lorensen, noted normal gait.  (T. 310, 313, 317, 328, 331, 336, 339, 345, 350, 356, 358, 363, 370, 375, 377, 380, 385, 394, 397, 400, 403, 408, 411, 414, 417, 428, 431, 531, 612, 617, 626, 639, 645.)  A notation indicated that Plaintiff did not want to increase her medication because she could function at the level she was on.  (T. 480.)  Dr. Ortiz provided no restrictions on Plaintiff's activities, other than "as tolerated."  (T. 570.)  Dr. Ortiz noted Plaintiff's complaints that cold weather increased her pain symptoms, which the ALJ accounted for in the RFC by limiting Plaintiff to work not involving cold temperature.  (T. 510.)

Plaintiff's testimony and activities further support the ALJ's RFC determination. Plaintiff informed Dr. Ortiz that she was looking for work, but could not perform the lifting requirements of 45 pounds.  (T. 574.)  She stated during the hearing, as she did to Dr. Ortiz, that she could not work as a cashier because that work required lifting 45 pounds. (T. 82.)  Plaintiff reported an increase in pain after working as a laundry attendant which required lifting and carrying loads of laundry and pulling clothing in and out of washers and dryers.  (T. 644.)  Plaintiff testified at the hearing the laundry job caused pain because of the pulling, not the lifting.  (T. 87.)  Plaintiff testified that she could not lift

more than 25 pounds.  (T. 82.)  Plaintiff's testimony is therefore consistent with the ALJ's RFC determination.

Plaintiff argues that despite affording Dr. Lorensen's opinion great weight, the ALJ failed to explain his reasoning for not adopting the environmental restrictions.  (Dkt. No. 9 at 12-13 [Pl.'s Mem. of Law].)  Plaintiff is correct that the ALJ did not provide any reasoning for rejecting this portion of Dr. Lorensen's opinion.  However, an ALJ's failure to expressly include non-exertional impairments in the RFC finding does not warrant remand, provided that the RFC findings afford an adequate basis for meaningful review, apply the proper legal standards and are supported by substantial evidence. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

Furthermore, remand is not required for harmless errors.  The environmental limitations imposed by the consultative examiners would not have changed the ALJ's step five determination.  *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remand is unnecessary where reconsideration would lead to the same conclusion previously reached), *see also Gishey v. Colvin*, No. 8:13-CV-1036, 2015 WL 1505674, at *11 (N.D.N.Y. Mar. 31, 2015) ("A plaintiff's need to avoid concentrated exposure to respiratory irritants has only a minimal impact on her ability to perform sedentary work. Even if the ALJ had considered and adopted the environmental limitations contemplated by Dr. Wassef and Dr. Medved, it would not have altered his analysis at step five and his conclusion, based solely on the Grids, that plaintiff could perform other, sedentary work.  Hence, any error arising from the ALJ's failure to explicitly address these environmental limitations in assessing plaintiff's RFC was harmless.") (citations and

internal quotation marks omitted). Here, any error to include environmental limitations in the RFC determination would be harmless error because the positions identified by the vocational expert do not require exposure to atmospheric conditions such as dusts, fumes, and gases. DOT 209.667-014, 222.687-022, 239.567-010.

In addition, Plaintiff did not allege disability due to asthma or any other respiratory impairment. (T. 112.) Plaintiff did not seek treatment for asthma, repeatedly denied shortness of breath, and her respiratory examinations were unremarkable. (T. 309, 313, 317, 319-320, 328, 325, 331, 335, 339, 342, 345, 347-348, 350, 352, 355, 367, 387, 612, 614-615, 617, 619-621, 623, 628, 632, 634, 636, 642, 644, 646-647.) Because Plaintiff did not allege disability due to asthma (or other breathing impairment) and the record did not contain treatment for asthma, the ALJ did not err in failing to adopt environmental limitations in his RFC determination.

Therefore, the ALJ's physical RFC determination is supported by substantial evidence in the record. For the reasons stated herein, and further outlined in Defendant's brief, the ALJ's physical RFC determination is upheld.

Plaintiff next argues that the ALJ erred in his mental RFC determination. Plaintiff appears to argue that the ALJ erred because he failed to provide good reasons for rejecting the opinion of Plaintiff's treating mental health provider, Dr. Lombardo and erroneously relied on the medical opinion evidence provided by the State agency medical consultants. (Dkt. No. 9 at 13 [Pl.'s Mem. of Law].) First, as stated herein, the ALJ did not commit legal error in relying on the opinions of State agency consultants. Second, the ALJ determination to afford Dr. Lombardo's statement "no weight" is supported by substantial evidence in the record.

To be sure, the opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

In a letter dated June 9, 2014, Dr. Lombardo stated that based on a patient health questionnaire dated December 10, 2013, Plaintiff suffered from "moderately severe depression." (T. 561.)[1] The ALJ afforded this opinion no evidentiary weight reasoning that it was not a function-by-function assessment and was based solely on Plaintiff's subjective reports which were not "corroborated by clinical findings during mental status examinations." (T. 29.)

The ALJ did not err in his assessment of Dr. Lombardo's statement. Although Dr. Lombardo stated that Plaintiff had moderately severe depression, he provided no functional limitations due to her depression and the medical evidence in the record supported the ALJ's RFC determination. Additionally, Dr. Lombardo based his statement on a form completed by Plaintiff in 2013, not on his own clinical observations. (T. 561.) An ALJ may provide less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff. *Roma v. Astrue*, 468 F.App'x 16, 19 (2d Cir. 2012).

Indeed, there are no treatment notations from Dr. Lombardo to support his 2014 statement. Notations from Dr. Biondi in January of 2010 indicated Plaintiff was seeing Dr. Lombardo for counseling (T. 357); however, notations from May 2010 indicated she ceased treatment with him (T. 349). The record then contains one treatment notation

---

[1]    The December 2013 questionnaire is not in the administrative record.

from Dr. Lombardo dated December 10, 2013.  (T. 562.)  In addition, Dr. Biondi, who managed Plaintiff's mental health medication, consistently noted that Plaintiff's depression was stable.  (T. 309, 312, 316, 327, 330, 338, 344, 349, 357.)  Plaintiff stated her medications worked well to treat her depression.  (T. 338.)  Therefore, the ALJ did not err in his assessment of Dr. Lombardo's opinion.  The opinion provided no functional limitations, was based solely on Plaintiff's subjective reporting, and inconsistent with medical evidence which indicated Plaintiff's depression was stable and well managed with medication.  In addition, the ALJ's mental RFC determination was supported by the medical opinions of the consultative medical examiners and other medical treatment notations in the record as outlined herein.

Dr. Shapiro opined that Plaintiff was capable of following and understanding simple directions and instructions, and performing simple and complex tasks independently.  (T. 527.)  Dr. Shapiro stated Plaintiff "may have difficulty consistently maintaining attention and concentration because she complains of problems doing so." (*Id*.)  She further stated Plaintiff was able to maintain a schedule, but might not be motivated to do so.  (*Id*.)  Dr. Shapiro opined Plaintiff was capable of learning new tasks.  (*Id*.)  She stated that Plaintiff "[did] not always" make appropriate decisions, relate adequately with others, or appropriately deal with stress.  (*Id*.)

Dr. Reddy reviewed the record and opined that Plaintiff could follow and understand simple directions and instruction.  (T. 121.)  Dr. Reddy noted Plaintiff was "not always motivated to do simple and complex tasks" and had "some limitations in making appropriate decisions, relating adequately with others and appropriately dealing

with stress." (*Id.*)  Dr. Reddy stated Plaintiff was capable of performing entry level work. (*Id.*)

The ALJ relied on the opinions of Drs. Shapiro and Reddy in formulating his mental RFC determination.  However, the ALJ rejected Dr. Shapiro's opinion that Plaintiff would have difficulty maintaining attention and concentration reasoning this limitation was not consistent with the objective medical evidence and was based on Plaintiff's subjective complaints.  (T. 30.)  Plaintiff argues this was in error.  (Dkt. No. 9 at 13 [Pl.'s Mem. of Law].)

The ALJ did not err in rejecting a portion of Dr. Shapiro's opinion.  Indeed, Dr. Shapiro noted on examination that Plaintiff's attention and concentration, as well as her memory, were intact.  (T. 526.)  Dr. Biondi consistently noted Plaintiff's memory was intact and her attention and concentration were normal.  (T. 380, 385, 394, 397, 403, 408, 411, 414, 417.)  Further, Dr. Shapiro's opinion clearly articulates that she relied on Plaintiff's subjective complaints in stating her opinion.  (T. 527) (Plaintiff "may have" difficulty maintaining attention and concentration "because she complain[ed] of problems doing so").

Plaintiff contends that by rejecting a portion of Dr. Shapiro's opinion he impermissibly substituted his own lay opinion regarding Plaintiff's limitations.  (Dkt. No. 9 at 14 [Pl.'s Mem. of Law].)  Plaintiff's argument is without merit.  Here, the ALJ did not impermissibly substitute his opinion, instead the ALJ resolved a conflict in the record and substantial evidence supported his determination.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  In weighing the medical opinion evidence in the record, the ALJ

determined that Dr. Shapiro's opinion was inconsistent with her clinical observations and the observations of other medical providers. The clinical observations of Dr. Shapiro and Plaintiff's treating providers, as outline above, support the ALJ's determination. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

The ALJ's mental RFC determination is supported by substantial evidence in the record. The ALJ relied on the medical source opinions of Drs. Shapiro and Reddy and objective clinical observations made by Dr. Shapiro and Plaintiff's treating providers. Therefore, for the reasons stated herein and further outlined in Defendant's brief, the ALJ's mental RFC determination is upheld.

### C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based

on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve her pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to her pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (T. 26.) Plaintiff argues that the ALJ erred in relying on a lack of objective findings in his credibility analysis because Plaintiff suffers from fibromyalgia which, by its very nature, cannot be measured by objective evidence. (Dkt. No. 9 at 15-16 [Pl.'s Mem. of Law].)

To be sure, denying a fibromyalgia plaintiff's claim of disability based on a perceived lack of objective evidence is reversible error. *See Grenier v. Colvin,* No. 13-CV-484, 2014 WL 3509832, at *3-4 (N.D.N.Y. July 14, 2014). Similarly, discrediting treating source medical opinions and subjective testimony concerning limiting effects of fibromyalgia simply because such evidence is not corroborated by objective medical evidence beyond what is needed for a diagnosis is error. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003).

However, the Second Circuit has held that a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 Fed. App'x 20, 22 (2d Cir. 2008); *see also Prince v. Astrue*, 514 F. App'x 18 (2d Cir. 2013). Therefore, while courts recognize that fibromyalgia is "a disease that eludes [objective] measurement," *Green-Younger,* 335 F.3d at 108, a diagnosis of fibromyalgia does not mandate a finding of disability, *see id.* at 104 (physician diagnosing fibromyalgia stated that the condition "in certain instances can be debilitating").

Moreover, with respect to pain, the Second Circuit has explained that "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir. 1983). Unlike the record in *Green-Younger,* which demonstrated that the plaintiff was diagnosed with "severe" fibromyalgia resulting in marked limitations in her daily living activities, *id.* at 104, the record in this case does not demonstrate that Plaintiff's fibromyalgia rose to the

level of markedly limiting her functionality.  *See Rivers,* 280 Fed. Appx. at 22; *see also*

*Wetherby v. Astrue*, No. 08-CV-165, 2009 WL 9054919, at *8 (D. Vt. Mar. 16, 2009).

In making his credibility determination, the ALJ outlined objective medical

evidence in the record pertaining to Plaintiff's back impairment, knee impairment, carpal

tunnel syndrome and edema.  (T. 27.)  The ALJ determined that the diagnostic evidence

failed to support Plaintiff's allegations regarding these impairments.  (*Id.*)  The ALJ then

separately addressed Plaintiff's fibromyalgia, noting her diagnosis in 2011 and

treatment.  (*Id.*)  In his discussion of fibromyalgia, the ALJ did not state that he

discredited Plaintiff's allegations based on a perceived lack of objective findings beyond

those needed for a diagnosis.  (*Id.*)  Further, the ALJ did not solely rely on objective

findings, or lack thereof, in making his overall credibility determination.

In making a credibility determination, the ALJ discussed Plaintiff's treatment

including pain management.  (T. 27.)  Regarding Plaintiff's fibromyalgia, the ALJ noted

that Dr. Ortiz adjusted Plaintiff's medication based on her complaints of pain; however,

his clinical findings remained the same.  (*Id.*)  Indeed, Dr. Ortiz consistently noted that

Plaintiff's medications allowed her to "care for [herself,] maintain current [activities of

daily living,] work and return to many daily activities."  (T. 475-510, 512-514, 568-681.)

Notations also indicated that Plaintiff did not want to increase her medication because

she could function on the current dose (T. 480) and that her medications worked well

and she did not want to change them (T. 477).  Plaintiff reported that her medication

reduced her pain and increased her mobility.  (T. 490 494, 508, 510, 514.)  The ALJ

also discussed evidence in the record which indicated symptom exaggeration.  (T. 28.)

The ALJ was well within his rights to consider this exaggeration as probative of

Plaintiff's lack of credibility. *Pidkaminy v. Astrue,* 919 F.Supp.2d 237, 249 (N.D.N.Y. 2013); *see Colon-Sanchez v. Comm'r of Soc. Sec.,* No. 5:14-CV-0705, 2016 WL 638816, at *6 (N.D.N.Y. Jan. 25, 2016), *report and recommendation adopted*, No. 5:14-CV-705, 2016 WL 632548 (N.D.N.Y. Feb. 17, 2016). The ALJ further took into consideration Plaintiff's attempts to work as evidence that she believed she was able to work in some capacity. (T. 28-29.)

Therefore, for the reasons herein and further outlined in Defendant's brief, the ALJ's credibility determination is supported by substantial evidence in the record.

### D. The ALJ's Step Five Determination

Plaintiff argues the ALJ erred in his step five determination because the hypothetical he presented to the vocational expert did not reflect all of Plaintiff's limitations. (Dkt. No. 9 at 17 [Pl.'s Mem. of Law].)

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is

**AFFIRMED**; and it is further

   **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        May 30, 2017

_____
William B. Mitchell Carter
U.S. Magistrate Judge